# SUPREME COURT OF THE UNITED STATES

No. 25A264 (25-332)

## DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. *v.* REBECCA KELLY SLAUGHTER, ET AL.

### ON APPLICATION FOR STAY

[September 22, 2025]

The application for stay presented to THE CHIEF JUSTICE and by him referred to the Court is granted. The July 17, 2025 order of the United States District Court for the District of Columbia, No. 25–cv–909, ECF Doc. 52, is stayed. The application is also treated as a petition for a writ of certiorari before judgment, and the petition is granted. The parties are directed to brief and argue the following questions: (1) Whether the statutory removal protections for members of the Federal Trade Commission violate the separation of powers and, if so, whether *Humphrey's Executor* v. *United States*, 295 U. S. 602 (1935), should be overruled. (2) Whether a federal court may prevent a person's removal from public office, either through relief at equity or at law. The Clerk is directed to establish a briefing schedule that will allow the case to be argued in the December 2025 argument session. The stay shall terminate upon the sending down of the judgment of this Court.

JUSTICE KAGAN, with whom JUSTICE SOTOMAYOR and JUSTICE JACKSON join, dissenting from the grant of the application for stay.

On top of granting certiorari before judgment in this case, the Court today issues a stay enabling the President to immediately discharge, without any cause, a member of the Federal Trade Commission (FTC). That stay, granted on

our emergency docket, is just the latest in a series. Earlier this year, the same majority, by the same mechanism, permitted the President to fire without cause members of the National Labor Relations Board, the Merits Systems Protection Board, and the Consumer Product Safety Commission. See *Trump* v. *Wilcox*, 605 U. S. ___ (2025); *Trump* v. *Boyle*, 606 U. S. ___ (2025). Congress, as everyone agrees, prohibited each of those presidential removals. See, *e.g.*, 15 U. S. C. § 41 (barring the President from discharging FTC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office"). Under the relevant statutes, the entities just listed are "classic independent agenc[ies]"— "'multi-member, bipartisan commission[s]' whose members serve staggered terms and cannot be removed except for good reason." *Boyle*, 606 U. S., at ___ (KAGAN, J., dissenting from grant of application for stay) (slip op., at 1). Yet the majority, stay order by stay order, has handed full control of all those agencies to the President. He may now remove—so says the majority, though Congress said differently—any member he wishes, for any reason or no reason at all. And he may thereby extinguish the agencies' bipartisanship and independence.

I dissented from the majority's prior stay orders, and today do so again. Under existing law, what Congress said goes—as this Court unanimously decided nearly a century ago. In *Humphrey's Executor* v. *United States*, 295 U. S. 602 (1935), we rejected a claim of presidential prerogative identical to the one made in this case. (Indeed, the suit emerged from a discharge at the very same agency.) Congress, we held, may restrict the President's power to remove members of the FTC, as well as other agencies performing "quasi-legislative or quasi-judicial" functions, without violating the Constitution. *Id.*, at 629. So the President cannot, as he concededly did here, fire an FTC Commissioner without any reason. To reach a different result requires reversing the rule stated in *Humphrey's*: It entails overriding

KAGAN, J., dissenting

rather than accepting Congress's judgment about agency design. The majority may be raring to take that action, as its grant of certiorari before judgment suggests. But until the deed is done, *Humphrey's* controls, and prevents the majority from giving the President the unlimited removal power Congress denied him. Because the majority's stay does just that, I respectfully dissent. Our emergency docket should never be used, as it has been this year, to permit what our own precedent bars. Still more, it should not be used, as it also has been, to transfer government authority from Congress to the President, and thus to reshape the Nation's separation of powers.